## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:10-CV-2130** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH GUFFY, CITI FINANCIAL** | : | |
| **MORTGAGE CO. INC., LISA A. LEE,** | : | |
| **JOSEPH A. GOLDBECK, JR., GARY** | : | |
| **E. McCAFFERTY, MICHAEL T.** | : | |
| **McKEEVER, KRISTINA G. MORTHA,** | : | |
| **LESLIE E. PUIDA, THOMAS I.** | : | |
| **PULEO, JAY E. KRIVITZ, DAVID B.** | : | |
| **FEIN, ANN E. SWARTZ, ANDREW F.** | : | |
| **GORNALL, GOLDBECK** | : | |
| **McCAFFERTY & McKEEVER,** | : | |
| **COURT OF COMMON PLEAS OF** | : | |
| **ALLEGHENY COUNTY, PA,** | : | |
| **UNITED STATES ATTORNEY,** | : | |
| **DEPARTMENT OF JUSTICE, and** | : | |
| **SECRETARY OF THE INTERIOR,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are four motions to dismiss the complaint filed by

Frederick Banks ("Banks") in the above-captioned action.  In his complaint, Banks

asserts that defendants instituted foreclosure proceedings on his property located

in Pittsburgh, Pennsylvania using flawed documents.  He requests that the court

compel (1) the state court to dismiss the foreclosure action, (2) the Secretary of the

Interior to arrest and punish the defendants, and (3) the United States Attorney to

present evidence of defendants' purported criminal wrongdoing to a grand jury.

For the reasons that the follow, the motions to dismiss will be granted.

I.    **Background**[1]

Frederick Banks ("Banks") is a federal prisoner currently incarcerated at

FCI - Forrest City in Arkansas.  See Federal Bureau of Prisons, Inmate Locator,

http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Jan. 6, 2012).  Banks claims

that in October of 2010, National Public Radio reported that the Department of

Justice was conducting an investigation into certain mortgage companies for filing

mortgage foreclosure actions against consumers using flawed documents.  (Doc. 1 ¶

1).  Banks asserts that during the same period, the defendants attempted to

foreclose on his property using mortgage documents unrelated to him or his

property.  (Id. ¶ 2); see CitiFinancial Mortgage Co., Inc. v. Banks, Allegheny County,

GD-06-001215.

A.    **The Real Property**

The real property subject to the mortgage foreclosure action in the Court of

Common Pleas of Allegheny County is located at 52 South 8th Street, Pittsburgh,

Pennsylvania.  (Doc. 26, Ex. A).  The mortgage was made and given by Freddie

Banks to Firstar Bank, N.A. on February 28, 2000.  (See Doc. 26 ¶ 4; Doc. 26, Ex. B).

The mortgage was later assigned to CitiFinancial Mortgage Co., Inc., and the

mortgage foreclosure action was commenced on January 17, 2006.  (Doc. 26, Ex. E).

---

[1]  In accordance with the standard of review for a motion to dismiss pursuant
to Rule 12(b)(6), the court will present the facts as alleged in the complaint.  See
infra Part II.  However, those portions of the complaint which consist of no more
than legal conclusions or a formulaic recitation of the elements of a cause of action
have been disregarded.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009);
Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

Freddie Banks, the owner of the real property and the mortgagor, is Frederick

Banks' mother.  See United States ex rel. Vampire Nation v. CitiFinancial Mortgage

Co., Inc., Civil Action No. 06-936, 2007 WL 2142404, at *2 (W.D. Pa. July 9, 2007).

Freddie Banks passed away on December 18, 2006.  (Doc. 26, Ex. C).[2]  Nonetheless,

in the mortgage foreclosure proceedings, Banks held himself out to be Freddie

Banks, the owner and mortgagor of the real property.  On January 19, 2011,

CitiFinancial Mortgage Co., Inc. discontinued the mortgage foreclosure matter in

the Court of Common Pleas of Allegheny County without prejudice.  (Doc. 26, Ex. E,

at 2).

**B.     Litigation in the Western District of Pennsylvania**

On July 14, 2006, Banks filed an action in the Western District of

Pennsylvania against CitiFinancial Mortgage Co., Inc., Goldbeck McCafferty &

Mackeever, Lisa A. Lee, Cherly A. Dilchus, Beth Gradel, and Michael Mackeever.

See United States ex rel. Vampire Nation v. CitiFinancial Mortgage Co., Inc., Civil

Action No. 06-936, 2007 WL 2142404 (W.D. Pa. July 9, 2007).  In that action, Banks

alleged that defendants violated his rights by foreclosing on a home owned by him.

Id.  Asserting in that matter that he is African American, and defendants were

---

[2]  The court may consider matters of public record in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (noting that when ruling on a motion to dismiss, the district court relies on the complaint, exhibits attached to complaint, and matters of public record, which include judicial proceedings and the opinions of other courts); see also Oshiver v. Levin, Fishbein, Secran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

3

trying to foreclose on his "poor black family," Banks claimed race discrimination. Id. After Banks represented to the court that he was not and had never been the owner of the home located at 52 South 8th Street, but rather his mother, Mrs. Freddie Banks, owned the house, the magistrate judge recommended that the court dismiss that action pursuant to the Prison Litigation Reform Act for failure to state a claim. Id. at *2. Banks lived in the home prior to his arrest and incarceration in February of 2005, see United States v. Banks, Criminal No. 2:03-CR-0245 (W.D. Pa.), which was prior to institution of the mortgage foreclosure proceedings. Without a legal interest in the real property, Banks lacked standing to bring the civil action. The district court adopted the magistrate judge's report and recommendation, dismissed the complaint and denied leave to amend as futile given Banks' lack of interest in the real property and therefore lack of standing to pursue his claims. United States ex rel. Vampire Nation v. CitiFinancial Mortgage Co., Inc., Civil Action No. 06-936, 2007 WL 2142410 (W.D. Pa. July 24, 2007).

## C.   **Filing of the Instant Lawsuit**

On October 15, 2010, Banks filed the instant action against numerous defendants. (Doc. 1). Claiming to be a Lakota Sioux American Indian, Banks asks the court to compel the Secretary of the Interior to have the defendants arrested and punished under the provisions of the Sioux Treaty of Fort Laramie of 1868. (Id. ¶ 3). He further requests that the court compel the U.S. Attorney to present evidence to a grand jury of criminal wrongdoing, violations of civil rights, and

violations of the Target Asset Relief Program.  (Id. ¶ 4).[3]  Finally, Banks asserts that

only the Oglala Sioux Tribal Court has jurisdiction over an American Indian in a

mortgage foreclosure action.  (Id. ¶ 5).  Therefore, he requests that this court order

the Court of Common Pleas of Allegheny County to dismiss the mortgage

foreclosure action, CitiFinancial Mortgage Co., Inc. v. Banks, Allegheny County,

GD-06-001215.  (Id. ¶ 5).  Banks, a frequent litigator in the federal courts, with three

strikes under the Prison Litigation Reform Act ("PLRA"), a statute which requires

the screening and dismissal of inmate complaints in certain circumstances, see 28

U.S.C. § 1915, claims that the instant action is criminal in nature, and thus, the

PLRA does not apply.  (Id. ¶ 6).

On February 22, 2011, the Court of Common Pleas of Allegheny County

The court initially dismissed the action after Banks failed to pay the filing fee

or move to proceed without prepayment of fees and costs within thirty (30) days.

(See Docs. 5, 7).  Banks moved to reopen the case, and proceed without prepayment

of fees, asserting that he was in transit to FCI-Safford and did not receive the

court's order.  (Docs. 8, 9).  The court granted the motions and had the complaint

served.  (Docs. 10, 12).

On February 22, 2011, the Court of Common Pleas of Allegheny County

("Court defendant") filed a motion to dismiss (Doc. 16) asserting Eleventh

Amendment immunity and, in the alternative, that as a state entity, the court does

---

[3]  The court is unaware of any program called the "Target Asset Relief
Program."  The court construes Banks' complaint to be referencing the Troubled
Assets Relief Program, which is part of the Emergency Economic Stabilization Act
of 2008, Pub. L. 110-343, 122 Stat. 3765.

not qualify as a "person" subject to suit under 42 U.S.C. § 1983.  On March 31, 2011, defendants Lisa A. Lee, Joseph A. Goldbeck, Jr., Gary E. McCafferty, Michael T. McKeever, Kristina G. Murtha, Leslie E. Puida, Thomas I. Puleo, Jay E. Kivitz, David B. Fein, Ann E. Swartz, Andrew F. Gornall and Goldbeck McCafferty & McKeever (hereinafter the "law firm defendants") moved to dismiss the complaint (Doc. 26).  The law firm defendants assert numerous grounds for dismissal, including pursuant to Federal Rule of Civil Procedure 41(b) for fraud on the court, the PLRA under the three-strikes rule, Rule 12(b)(6) for failure to state a claim, Rule 12(b)(1) for lack of jurisdiction, and Rule 12(b)(3) for improper venue.  (Doc. 26). The third motion dismiss (Doc. 29), filed on April 1, 2011, by CitiFinancial Mortgage Co., Inc. and Deborah Guffy, a CitiFinancial employee (hereinafter "CitiFinancial defendants"), asserts that Banks' claims are barred by the doctrine of *res judicata* based on the 2006 Western District of Pennsylvania case, and that Banks lacks standing.  Finally, the federal government, on behalf of the United States Attorney, the Department of Justice, and the Secretary of the Interior (hereinafter the "federal defendants"), filed a motion to dismiss (Doc. 31) on April 4, 2011.  The federal defendants assert that the complaint fails to state a claim upon which relief can be granted and that the complaint is deficient on jurisdictional grounds.  (Id.) Banks filed a brief in opposition (Doc. 34) on April 18, 2011.  The motions have been fully briefed and are ripe for disposition.

II.   <u>**Standard of Review**</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).   When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." <u>Gelman v. State</u>

<u>Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. County</u>

<u>of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see</u> <u>also</u> <u>Kanter v. Barella</u>, 489 F.3d

170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin,</u>

<u>Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see</u> <u>also</u> <u>In re</u>

<u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)).   To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion,

the court must conduct a three-step inquiry.   <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629

F.3d 121, 130-31 (3d Cir. 2010).   In the first step, "the court must 'tak[e] note of the

elements a plaintiff must plead to state a claim.'"   <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556

7

U.S. 662, 129 S. Ct. 1937, 1947 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. 662, 129 S. Ct. at 1949.  When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.  Discussion

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), codified at 28 U.S.C. § 1915, in an effort to curb the significant amount of prisoner litigation in the federal courts.  Pursuant to the PLRA, a prisoner is subject to a three-strikes rule for commencing civil actions without prepayment of fees and costs.  See 28 U.S.C. § 1915(g).  By statute:

> In no event shall a prisoner bring a civil action or appeal a judgment in
> a civil action or proceeding under this section if the prisoner has, on 3
> or more prior occasions, while incarcerated or detained in any facility,

> brought an action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

Id.  Plaintiff Banks has accrued *well over* three strikes.  See Banks v. Pennsylvania, Civil Action No. 09-1437, 2010 WL 569545, at *1 n.1 (W.D. Pa. Jan. 4, 2010) (citing cases assessing three or more strikes and noting that between January of 2005 and May of 2008 Banks has filed or participated in 45 civil actions in federal district courts, 31 bankruptcy cases, and approximately 60 cases in the federal courts of appeal); see also Banks v. Sager, Civil Action No. 1:11-CV-0741, 2011 WL 1542136 (M.D. Pa. Apr. 21, 2011).[4]  The complaint includes no claim that Banks is in imminent danger of serious physical injury, which would render the three-strikes provision inapplicable.  28 U.S.C. § 1915(g).  Instead Banks attempts to evade operation of the PLRA against him by asserting that his complaint is a request for issuance of a writ of mandamus.  (Doc. 1 ¶ 6).

The power to issue writs of mandamus, originally a form of common law judicial relief compelling a public official to perform a duty mandated by law, is a well-settled one now codified in federal statute.  Pursuant to 28 U.S.C. § 1361, "[t]he

---

[4] This court has previously taken judicial notice of the following civil rights actions filed by Banks that were dismissed as legally frivolous for failure to state a claim upon which relief may be granted:  (1) Banks v. Hayward, et al., Civil No. 2:06-CV-00509 (W.D.Pa. May 30, 2006) (Lancaster, J.); Banks v. Hayward, et al., Civil No. 2:06-CV-01572 (W.D. Pa. Jan. 10, 2007) (Lancaster, J.); Banks v. Dove, et al., Civil No. 1:06-CV-02289 (M.D. Pa. Jan. 16, 2007) (Conner, J.); and, Banks v. Pittsburgh Tribune Review, et al., Civil No. 2:07-CV-00336 (W.D. Pa. May 4, 2007) (Lancaster, J.).  Banks v. Crockett, Civil No. 1:07-CV-1019, 2007 WL 1655504, * 2 (M.D. Pa. June 7, 2007) (Conner, J.).

district courts shall have original jurisdiction in any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

A writ of mandamus is an extraordinary form of relief seldom granted. <u>See</u> <u>In re Patenaude</u>, 210 F.3d 135, 140 (3d Cir. 2000) (calling a writ of mandamus "a drastic remedy" which is "seldom issued" and its use "discouraged" (internal citations and quotations omitted)). A plaintiff seeking the issuance of a writ has the burden to establish that: (1) there are no other adequate means to attain the desired relief, and (2) his right to a writ of mandamus is clear and indisputable. <u>Hinkel v.</u> <u>England</u>, 349 F.3d 162, 164 (3d Cir. 2003) (citing <u>In re Patenaude</u>, 210 F.3d at 141). Mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984) (citations omitted).

The United States Court of Appeals for the Third Circuit has ruled that mandamus petitions are not "civil actions" or "appeals" subject to the requirements of the PLRA. <u>In re Steele</u>, 251 F. App'x 772 (3d Cir. 2007) (not published) (citing <u>Madden v. Myers</u>, 102 F.3d 74, 77 (3d Cir.1996). However, a "litigant should not be able to evade the PLRA by masking as a mandamus petition a paper otherwise subject to the Act." <u>Madden v. Myers</u>, 102 F.3d at 78. Accordingly, if a prisoner files a "mandamus petition" that actually would initiate an appeal or a civil action, the

PLRA applies.  In re Steele, 251 F. App'x at 773.  With this understanding, the court now turns to the motions to dismiss.

### A.    Court of Common Pleas

Banks requests that this court order the Court of Common Pleas of Allegheny County to dismiss the mortgage foreclosure action, CitiFinancial Mortgage Co., Inc. v. Banks, Allegheny County, GD-06-001215.  However, this court lacks the authority to do so.  A federal district court cannot by way of writ of mandamus order state courts or state officials to take action.  See In re Brown, 382 Fed. App'x 150, 150-51 (3d Cir. 2010) (citing In re Tennant, 359 F.3d 523, 531 (D.C. Cir. 2004).  Such a request extends beyond the bounds of the federal court's mandamus jurisdiction.  Id.; see also In re Wallace, 405 Fed. App'x 580 (3d Cir. 2011) (federal court lacks jurisdiction to compel state court to dismiss case).[5]  The court will thus grant the Court defendant's motion to dismiss.[6]

### B.    Law Firm Defendants and CitiFinancial Defendants

With respect to the law firm defendants, their only discernable connection to the mortgage foreclosure action is their representation of CitiFinancial in the

---

[5]  In addition, the court notes that the mortgage foreclosure action was discontinued without prejudice on January 19, 2011, (Doc. 17, Ex. A, at 3), thereby mooting Banks' request.

[6]  Given the court's conclusion that a writ of mandamus cannot issue against a state court, the court need not address the court defendant's other arguments for dismissal.  Nonetheless, assuming this were a civil action and assuming further that Banks could surmount the three-strikes bar under the PLRA, the Court of Common Pleas clearly enjoys sovereign immunity under the Eleventh Amendment.  See Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005).

mortgage foreclosure.  It appears that Banks is claiming the law firm defendants assisted CitiFinancial in instituting the mortgage foreclosure action, purportedly using flawed documents.  (See Doc. 1 ¶ 2).  However, neither the law firm and its attorneys, nor CitiFinancial Mortgage Co., Inc. and its employees are officers or employees of the United States, or any agency thereof within the meaning of the mandamus statute.  18 U.S.C. § 1361.  The court simply has no authority to issue a writ of mandamus compelling them to perform any action.  Indeed, Banks does not ask the court to compel these defendants to take or desist in any action.  Rather, Banks requests that the court compel the Secretary of the Interior to arrest and punish the defendants, and the U.S. Attorney to present evidence of defendants' purported wrongdoing to a grand jury—requests which the court will address below with regard to the federal defendants.

To the extent Banks is asserting a fraud claim against the law firm defendants and the CitiFinancial defendants, such a civil action is barred by the three-strikes rule of the PLRA.  See 28 U.S.C. § 1915(g).  Therefore, the motions to dismiss filed by the law firm defendants and the CitiFinancial defendants will be granted.[7]

### C.    **Federal Defendants**

Banks requests that the court compel the Secretary of the Interior to cause the defendants to be arrested and punished pursuant to the provisions of the Sioux

---

[7]  The court need not address the parties' additional arguments for dismissal of the complaint.

Treaty of Fort Laramie.  (Doc. 1 ¶ 3).  In addition, Banks requests that the court order that the United States Attorney be compelled to present evidence of criminal wrongdoing, civil rights violations and violations of the Troubled Assets Relief Program by the other defendants to a federal grand jury.  (Id. ¶ 4).  The federal defendants move to dismiss Banks' complaint for failure to state a claim and lack of jurisdiction.  The Secretary of the Interior and the United States Attorney are officers or employees of the United States that the court could, under its mandamus powers, compel to act.  28 U.S.C. § 1361.  The court will therefore address each claim in turn.

### 1.    Sioux Treaty of Fort Laramie

In his complaint, Banks asserts that he is a Lakota Sioux American Indian and requests that the court compel the Secretary of the Interior to arrest and punish the defendants—presumably the law firm defendants and the CitiFinancial defendants—pursuant the provisions of the Sioux Treaty of Fort Laramie.[8]  (Doc. 1

---

[8] In some of the litigation Banks has brought or participated in before the federal courts he claims to be African American.  See e.g., Banks v. Hull, Civil No. 2:04-CV-1771 (W.D. Pa.) (Doc. 24 ¶¶ 2, 65); United States ex rel. Vampire Nation, 2007 WL 2142404, at *1 (civil action in which Banks claimed that the mortgage company and lawyers were attempting to foreclose on his "poor black family").  In other litigation, such as this action, Banks asserts that he is American Indian.  (Doc. 1 ¶ 3); see also Banks v. U.S. Attorneys Office, Civil Action No. 11-626, 2011 WL 6739290 (W.D. Pa. Dec. 1, 2011).  The Federal Bureau of Prisons Inmate Locator identifies Banks as American Indian.  Federal Bureau of Prisons, Inmate Locator, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Jan. 6, 2012).  The court takes Banks' assertion of American Indian heritage in the complaint as true for purposes of the motions to dismiss.  See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

¶ 3).  The Sioux Treaty of Fort Laramie, entered into April 29, 1868, ended armed

conflict between bands of the Loakota Indians and the United States, and granted

reservation land and hunting rights to the Lakota Indians in the Dakota territory.

<u>See</u> Treaty with the Sioux Indians, 15 Stat. 635.  Article I of the treaty states, in

pertinent part:

> If bad men among the whites, or among other people subject to the
> authority of the United States shall commit any wrong upon the
> person or property of the Indians, the United States will, upon proof
> made to the agent and forwarded to the Commissioner of Indian
> Affairs at Washington City, proceed at once to cause the offender to be
> arrested and punished according to the laws of the United States, and
> also re-imburse the injured person for the loss sustained.

<u>Id.</u> art. I.

In his complaint, Banks fails to state any wrong that has been committed

upon his person or property by the defendants.  He claims that defendants

proceeded to foreclose on his property using flawed documents, namely the

mortgage of another individual taken on a different property.  (Doc. 1 ¶ 2).  However

Banks has admitted in other litigation that the property at issue, which is not within

the bounds of this district, is not owned by him.  <u>See</u> <u>United States ex rel. Vampire</u>

<u>Nation</u>, 2007 WL 2142404.[9]  Nor is there any indication that Banks has submitted

---

[9] The law firm defendants note that the document—an unrelated mortgage
for another property between different parties—was submitted in the state
foreclosure proceeding in error as an exhibit to a motion for summary judgment.
(Doc. 27, at 2).  The complaint filed by CitiFinancial referenced the correct
mortgage and recording information, and as a matter of public record was
incorporated by reference.  <u>See</u> Pa. R. Civ. P. 1019(g).  Moreover, the incorrect
document was replaced on October 28, 2010.  (Doc. 26, Ex. E, at 2).

proof of any wrong to the Commissioner of Indian Affairs in accordance with Article I of the Treaty.  See Elk v. United States, 70 Fed. Cl. 405, 407 (Fed. Cl. 2006) (stating in damages action under Article I "Bad Men" clause of Sioux Treaty that as condition of receiving reimbursement Treaty "plainly requires that 'proof [be] made to the agent and forwarded to the Commissioner of Indian Affairs'"); Hebah v. United States, 428 F.2d 1334, 1340 (Fed. Cl. 1970).

Moreover, in a recent opinion from the Court of Federal Claims, the court interpreted the phrase "subject to the authority of the United States" in the "bad men" clause of Article I of the Sioux Treaty of Fort Laramie.  Richards v. United States, 98 Fed. Cl. 278 (Fed. Cl. 2011).  The court held that an individual who has no connection to the federal government, other than his citizenship, is not "subject to the authority of the United States" within the meaning of the "bad men" clause of Article I of the Sioux Treaty, and therefore the United States could not be held liable for any loss sustained by plaintiffs as a result of that individual's conduct.  Id. at 290 ("[I]n order to invoke jurisdiction under the first "bad men" clause contained in Article I of the Fort Laramie Treaty, a plaintiff must allege a 'loss' that resulted from a 'wrong' committed by a 'bad man' who was 'subject to the authority of the United States,' i.e., an individual who acted as an agent, employee, representative, or in any other capacity for or on behalf of the United States.").[10]  There is no

---

[10]  Richards involved a claim for reimbursement from the government for the "wrongs" of an individual who killed two Indians in a drunk driving accident on a highway passing through reservation lands subject to the Treaty of Fort Laramie. Although Richards did not involve a request that the government arrest and punish

indication that the law firm or CitiFinancial defendants were acting as agents, employees or representatives on behalf of the United States in the state court mortgage foreclosure action.  As such, they do not fall within the scope of Article I of the Treaty.  Therefore, Banks has not established a clear and indisputable right to relief to warrant the extraordinary remedy of a writ of mandamus compelling the Secretary of the Interior to act.

2.     **Grand Jury**

Banks also requests that the court compel the United States Attorney to present evidence to a grand jury pursuant to 18 U.S.C. § 3332 of defendants' purported criminal wrongdoing and violation of civil rights for allegedly failing to follow through on a loan remodification.  (Doc. 1 ¶ 4).  Section 3332 of Title 18 of the United States Code delineates the duty of *special* grand juries to inquire into offenses against the criminal laws of the United States committed within the

---

the individual, the requirement that the individual be "subject to the authority of the United States" is equally applicable to such requests.  See Treaty with the Sioux Indians, Art. I, 15 Stat. 635; see also Richards, 98 Fed. Cl. at 289 (quoting Zephier v. United States, No. 03-768, slip op. at 9  (Fed. Cl. Oct. 29, 2004) ("The Sioux Treaty, like others, clearly states that the United States will both *arrest* a non-Native American *government representative* who harms a Sioux or his property and *reimburse* the damages sustained by the claimant . . . .") (emphasis added)).  In addition, there is some indication that the "wrongs" implicated by Article I of the Sioux Treaty of Fort Laramie must be acts that threaten the peace that the Treaty was intended to protect.  See Richards, 98 Fed. Cl. at 288-89 (citing Garreaux v. United States, 77 Fed. Cl. 726 (Fed. Cl. 2007) (dismissing complaint for lack of jurisdiction where plaintiff asserted breach of contract/negligence claim against federal agency, not individual subject to the authority of the United States for a wrongful criminal act) and Hernandez v. United States, 93 Fed. Cl. 193 (Fed. Cl. 2010)).

district in which the special grand jury is impaneled.  18 U.S.C. § 3332(a).  Either the

court or an attorney appearing on behalf of the United States may bring the grand

jury's attention to any such alleged offenses.  Id.  The provision further states that

"[a]ny such attorney receiving information concerning such an alleged offense from

any other person shall, if requested by such other person, inform the grand jury of

such alleged offense . . . ."  Id.

The deficiencies in Banks' request are numerous.  Section 3332, a provision

of the Organized Crime Control Act of 1970, creates a right for individuals to have

information known by them concerning *organized crime* to be presented to a special

grand jury.  See In re Grand Jury Application, 617 F. Supp. 199, 203-06 (S.D.N.Y.

1985) (engaging in extensive analysis of legislative history of § 3332 and concluding

that § 3332 concerns the presentation of information of organized crime); see also

Sargeant v. Dixon, 130 F.3d 1067, 1068 (D.C. Cir. 1997) (noting that § 3332 is a

provision of the Organized Crime Control Act of 1970).  Banks fails to allege any

organized crime purportedly engaged in by the law firm and CitiFinancial

defendants.  In fact, the court is at a loss to identify *any* alleged criminal activity

whatsoever in Banks' complaint.  Rather, Banks complains of a mortgage

foreclosure action, that has since been dismissed, on a property not within this

district in which he has no legally cognizable interest.  See United States ex rel.

Vampire Nation, 2007 WL 2142404 (in which Banks admitted to not owning the

property at 52 South 8th Street, Pittsburgh, Pennsylvania).  Thus, even if Banks

had alleged organized criminal activity by the defendants, Banks lacks standing to

pursue a writ of mandamus compelling the presentation of information to a grand

jury.  See Sargeant v. Dixon, 130 F.3d 1067, 1069 (D.C. Cir. 1997) (holding that

convicted felons lacked standing to seek writ of mandamus compelling the

presentation of information to grand jury of alleged prosecutorial misconduct

because their interests in the prosecution of government officials and seeing that

the laws are enforced are not legally cognizable interests under Article III ).

Moreover, special grand juries are only impaneled in districts with over four million

inhabitants or in which the Attorney General certifies in writing to the Chief Judge

of the district that a special grand jury is necessary due to criminal activity in the

district.  See 18 U.S.C. § 3331(a).  Such special grand juries are not impaneled in the

Middle District of Pennsylvania.  Even if Banks had standing to pursue a writ of

mandamus, Banks fails to state a claim upon which relief may be granted.  He is

simply not entitled to the requested relief.  Therefore, the federal defendants'

motion to dismiss will be granted.

### D.    Leave to Amend the Complaint

Although leave to amend is freely granted, particularly with respect to *pro se*

plaintiffs, the court need not grant leave to amend when amendment would be

futile.  See Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004).  In the instant

matter, leave to amend would be futile.  To the extent Banks' complaint is in

mandamus, he fails to state a claim upon which relief may be granted.  The court

cannot, as a matter of law, issue a writ of mandamus compelling action by a state

court or private entities and individuals.  Nor can Banks show that his right to a

writ against the federal defendants is clear and indisputable or that there are no

other adequate means of obtaining relief.  To the extent Banks' complaint states

civil causes of action, his suit is barred pursuant to the three strikes rule of the

PLRA.  <u>See</u> 28 U.S.C. § 1915(g).

## IV.   **Conclusion**

For the reasons stated above, the court will grant the four motions to dismiss

filed by the defendants.  An appropriate order follows.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       January 10, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS,** | : | **CIVIL ACTION NO. 1:10-CV-2130** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH GUFFY, CITI FINANCIAL** | : | |
| **MORTGAGE CO. INC., LISA A. LEE,** | : | |
| **JOSEPH A. GOLDBECK, JR., GARY** | : | |
| **E. McCAFFERTY, MICHAEL T.** | : | |
| **McKEEVER, KRISTINA G. MORTHA,** | : | |
| **LESLIE E. PUIDA, THOMAS I.** | : | |
| **PULEO, JAY E. KRIVITZ, DAVID B.** | : | |
| **FEIN, ANN E. SWARTZ, ANDREW F.** | : | |
| **GORNALL, GOLDBECK** | : | |
| **McCAFFERTY & McKEEVER,** | : | |
| **COURT OF COMMON PLEAS OF** | : | |
| **ALLEGHENY COUNTY, PA,** | : | |
| **UNITED STATES ATTORNEY,** | : | |
| **DEPARTMENT OF JUSTICE, and** | : | |
| **SECRETARY OF THE INTERIOR** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 10th day of January, 2012, upon consideration of the motions

to dismiss (Docs. 16, 26, 29, 31) the above-captioned action, and for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED that:

1.     The motions to dismiss (Docs. 16, 26, 29, 31)  are GRANTED.

2.     The Clerk of Court is directed to CLOSE the case.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge